IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

JOSEPH R. WALKER and DONNA WALKER                                    PLAINTIFFS

VERSUS                                         CIVIL ACTION NO.  2:07cv274 KS-MTP

GEORGE KOCH SONS, INC.
and JOHN DOES 1 THROUGH 10                                            DEFENDANTS

ORDER

THIS MATTER is before the court on the following motions filed by defendant George Koch Sons, Inc.: [75] Motion to Strike Joseph Walker's Proposed Deposition Changes and Request for Hearing; [81] Emergency Motion to Strike Untimely Affidavits, to Exclude Testimony and for Hearing; and [82] Emergency Motion to Exclude Plaintiffs' Experts' Supplemental Reports.  The motions result from a flurry of last-minute disclosures made by plaintiffs just prior to the expiration of the discovery deadline.  Having considered the submissions of the parties, the entire record in this matter and applicable law, the court finds that the motions should be denied, as set forth below.

Factual Background

Plaintiffs Joseph and Donna Walker filed this lawsuit on September 19, 2007, alleging that Mr. Walker was injured while exiting a transformer washer, also referred to by the parties as a surface preparation machine, at his place of employment (Howard Industries' Laurel, Mississippi plant) that had been designed and manufactured by defendant (the "Koch SPM").[1] Pursuant to the Case Management Order entered on December 5, 2007 [7], which was modified by Orders dated May 1, 2008 [36] and June 20, 2008 [58], the discovery deadline was August 29,

---

[1] The suit was filed in the Circuit Court of Jones County, Mississippi, and was removed to this court on October 23, 2007.

2008, with disclosures due by December 19, 2007, plaintiffs' expert designations due by May 30, 2008, and defendant's expert designations due by July 16, 2008. The motions deadline was set for September 12, 2008, although that deadline has been suspended in light of the instant motions. Trial was set to begin during a court term commencing on January 5, 2009.

<u>Motion to Strike Proposed Deposition Changes</u>

Mr. Walker was deposed by defendant's counsel on June 27 and 28, 2008. At the end of the deposition, he reserved his right to review the transcript for errors. On July 2, plaintiffs' counsel requested from the court reporter a draft copy of Mr. Walker's deposition, as well as several others, for the purpose of preparing for the upcoming depositions of plaintiffs' experts. The following day, the court reporter sent a draft transcript in ASCII format to plaintiffs' attorneys and stated that the final transcript would be available shortly. The final transcripts were received in plaintiffs' counsels' office on July 9, 2008 and were mailed to plaintiffs for their review and signature.

On August 8, 2008, Mr. Walker submitted an errata sheet that included 11 total changes to his deposition testimony - two of which are typographical in nature, and nine of which are more substantive changes.[2] On August 18, 2008, defendant moved to strike the proposed changes, arguing that the errata sheet was not timely submitted, and that substantive changes are not allowed under Rule 30(e)(1) of the Federal Rules of Civil Procedure.[3]

---

[2] The changes will not be listed here, as a copy of the errata sheet can be found in ecf doc. no. 77-4. Mr. Walker stated the following reasons for his substantive changes: "Upon reading my transcript and feeling better than I did on June 27, 208, at which time I was in much pain, nervous, and tired, my recollection was better and my memory was clearer;" and "Upon reading my transcript, I did not completely express my thought to clearly and completely state what I intended to state."

[3] Defendant has stated that it does not object to the two purely typographic changes.

The court will first address defendant's argument that the errata sheet was not timely submitted. Rule 30(e)(1) allows a deponent thirty days after being notified that his deposition transcript is available in which to review the transcript and, "if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." Defendant argues that Mr. Walker's deposition transcript was "available" on July 3, 2008, when plaintiffs' counsel received the rough draft from the court reporter. Therefore, defendant argues, since the errata sheet was not submitted until August 8, 2008, it was not timely. The court finds this argument unconvincing. The draft transcript was requested by plaintiff's counsel so that they could prepare for other depositions in this case, which were to take place before the official transcript would be ready. The draft transcript was sent with the understanding that a complete and final copy would be sent by mail the following Monday. The draft transcript sent to plaintiff's counsel did not contain any exhibits, nor did it contain the errata sheet, instructions for the errata sheet, or the court's reporter's signed certificate. The final transcript - containing the aforementioned items - was received at plaintiffs' counsel's office on July 9, 2008. Accordingly, the court finds that the errata sheet was timely submitted on August 8, 2008.

Defendant further argues that the proposed changes are inappropriate substantive changes and/or additions to Mr. Walker's deposition testimony (some of which contradict his prior testimony) that should not be allowed under Rule 30(e). As set forth *supra*, Rule 30(e) allows a deponent to make "changes in form or substance" to deposition testimony, but it does not elaborate on the types or extent of changes that may be made. Consequently, a number of differing approaches have been taken by courts that have addressed this issue. The Fifth Circuit has not squarely addressed the scope of Rule 30(e), although it has held in an unpublished

3

opinion that Rule 30(e)'s requirements must be strictly followed.  *See Reed v. Hernandez*, 114 Fed. Appx. 609, 611 (5th Cir. Oct. 8, 2004) (affirming lower court's exclusion of errata sheet based on its untimely filing and declining to address whether subject matter of proposed changes was appropriate).

The "growing minority view," or "recent trend," is to interpret Rule 30(e) narrowly, allowing only corrective or non-substantive changes to deposition testimony.  *See Reilly v. TXU Corp.*, 230 F.R.D. 486, 487-88 (N.D. Tex. Aug. 15, 2005) (citations omitted).  This approach has been taken by the Western District of Louisiana in *Greenway v. Int'l Paper Co.*, 144 F.R.D. 322 (W.D. La. 1992).  In *Greenway*, plaintiff made 64 changes to her deposition testimony - including, as in this case, changing answers of "no" to "yes" and providing lengthy additions to other answers.  The court ordered all changes to be stricken, holding that the purpose of Rule 30(e) is merely to allow typographical and transcriptional errors.  The court stated

> The Rule cannot be interpreted to allow one to alter what was said under oath.  If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses.  Depositions differ from interrogatories in that regard.  A deposition is not a take home examination.

*Id.* at 325.  This minority view has been endorsed or adopted in at least three circuits.  *See Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1224-25 (9th Cir. 2005); *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 n.5 (10th Cir. 2002); *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000).

In contrast, the majority view "accords a plain meaning approach or literal interpretation to Rule 30 and, consequently, allows any change in form or substance regardless of whether convincing explanations support the change."  *Betts v. Gen'l Motors Corp.*, 2008 WL 2789524,

4

at * 2 (N.D. Miss. July 16, 2008) (citations omitted). This view, allowing substantive and even contradictory changes to be made to deposition testimony, has been adopted in this circuit by the Northern and Western Districts of Texas, as well as in numerous other courts. *See Reilly*, 230 F.R.D. at 490; *Innovative Mktg. & Tech., LLC*, 171 F.R.D. 203, 204-05 (W.D. Tex. Mar. 24, 1997); *see also Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 103 (2d Cir. 1997); *Foutz v. Vinton*, 211 F.R.D. 293, 295 (W.D. Va. Feb. 1, 2002); *DeLoach v. Phillip Morris Cos., Inc.*, 206 F.R.D. 568, 573 (M.D.N.C. Apr. 3, 2002); *Holland v. Cedar Creek Mining, Inc.*, 198 F.R.D. 651, 653 (S.D.W.Va. Jan. 18, 2001); *Elwell v. Conair*, 145 F.Supp. 2d 79, 87 (D.Me. 2001); *Tingley Sys., Inc. v. CSC Consulting, Inc.*, 152 F.Supp. 2d 95, 120 (D.Mass. 2001); *Titanium Metals Corp. v. Elkem Mgmt., Inc.*, 191 F.R.D. 468, 472 (W.D. Pa. Nov. 5, 1998); *U.S. ex rel. Burch v. Piqua Eng'g, Inc.*, 152 F.R.D. 565, 566-67 (S.D. Ohio Feb. 2, 1993); *Lugtig v. Thomas*, 89 F.R.D. 639, 641 (N.D. Ill. Apr. 2, 1981).

These courts that interpret Rule 30(e) broadly generally have adopted remedial measures to limit the potential for abuse. Such measures include reopening the deposition for limited purposes, requiring the deponent to pay the costs of reopening his deposition, and ordering that the original and changed answers, as well as the reasons for the changes, remain in the record and may be used during summary judgment and/or at trial. *See*, *e.g.*, *Reilly*, 230 F.R.D. at 491; *Foutz*, 211 F.R.D. at 295; *Elwell*, 145 F.Supp. 2d at 87; *Tingley,* 152 F.Supp. 2d at 120-21; *Podell*, 112 F.3d at 103; *Burch*, 152 F.R.D. at 567; *Sanford v. CBS, Inc.*, 594 F.Supp. 713, 715 (N.D. Ill. 1984); *Lugtig*, 89 F.R.D. at 641; *Allen & Co. v. Occidental Petroleum Corp.*, 49 F.R.D. 337, 341 (S.D.N.Y. Jan. 5, 1970).

The deposition changes in the instant case are extremely troubling, as they appear in some

instances to contradict Mr. Walker's prior testimony. In a few instances, the new or revised answer bears little resemblance - either in substance or form - to the original answer. Indeed, one of the changes is a twelve-sentence addition to the original concise answer of "yes you could," which contains a lengthy explanation going far beyond the simple question asked, which was: "And you can then grab the bottom of the door and shut the door?" Nevertheless, having considered the matter carefully, in light of the plain language of Rule 30(e) the court will follow the majority approach, as it "furthers the purpose of the discovery process - to allow the parties to elicit the true facts of a case before trial."[4]  *Reilly*, 230 F.R.D. at 490.

    Accordingly, as plaintiffs have complied with the requirements of Rule 30(e), the changes listed in Mr. Walker's errata sheet will be allowed. However, in light of the number and scope of the changes, the court finds it appropriate to implement a number of the safeguards discussed above. Defendant will be allowed to re-open Mr. Walker's deposition, during which time Mr. Walker may be asked "about the reasons for the changes and the source of the changes, such as whether they came from [him] or his counsel," as well as "follow-up questions to the changed responses." *Reilly*, 230 F.R.D. at 491 (*citing Lugtig*, 89 F.R.D. at 642; *Sanford*, 594 F.Supp. at 715; *Tingley*, 152 F.Supp. 2d at 121). Plaintiffs will be responsible for paying the reasonable attorney's fees and costs incurred by defendant as a consequence of re-opening Mr. Walker's deposition. After the deposition, defendant may submit an application to the court for these reasonable attorney's fees and costs. *Id.* (*citing Lugtig*, 89 F.R.D. at 642; *Sanford*, 594 F.Supp. at 715). In addition, Mr. Walker's original deposition testimony, the new answers on his errata

---

[4] The court is also guided by the fact that Mr. Walker's errata sheet was submitted prior to the filing of a motion for summary judgment or other dispositive motion. *See Innovative Mktg.*, 171 F.R.D. at 205 (citations omitted).

sheet and any new testimony given at the re-opening of his deposition will remain in the transcript and may be used for any purpose allowed by the rules of evidence or procedure.

<u>Motion to Strike Untimely Affidavits, to Exclude Testimony and for Hearing</u>

In this motion, defendant seeks to have stricken the affidavits of Mr. Walker's co-workers, David Walters and Paul Chandler (the "Affidavits"), and further requests that the court exclude any testimony of Walters and Chandler by deposition, affidavit or at trial. The basis for defendant's motion is plaintiffs' alleged untimely disclosure of the Affidavits.

It is undisputed that the existence of the Affidavits was disclosed by plaintiffs to defendant for the first time on August 29, 2008 - the discovery cutoff date - when plaintiffs served via email Mr. Walker's Second Supplemental Response to defendant's Interrogatories [81-14].[5] In response to Interrogatory No. 15, which asks whether any statements had been obtained from anyone concerning the facts at issue and if so, from whom, the Supplemental Answer states: "Without waiving said objection, see the affidavits of David Walters and Paul Chandler attached hereto."[6] Plaintiffs' original answer to this interrogatory was: "General Objection No. 1 [attorney-client/work product privileges] is incorporated herein by reference. This Interrogatory seeks information which constitutes attorney work product and/or is protected by attorney-client privilege." In response to Interrogatory No. 25, which asks whether Mr. Walker had ever complained to his supervisor, co-employees or others about the machine and if

---

[5] Also at this time, plaintiffs served their supplemental expert reports, including a supplemental report by Andrew McPhate which references the Affidavits as part of the basis for his supplemental opinions.

[6] The Affidavits themselves were not sent to plaintiffs until September 2, when defendant's counsel informed plaintiffs' counsel via email that the Affidavits had not been attached to the Second Supplemental Response.

7

so, to provide certain details regarding such complaint, the Supplemental Answer was that he recalled discussing the matter with his co-employee David Walters, and he again refers to the attached affidavit of David Walters. Mr. Walker's original answer to this interrogatory was: "The Plaintiff cannot recall filing any formal complaints with management."[7]

Defendant argues that plaintiffs "willfully withheld these Affidavits until the last possible minute," despite their mandatory disclosure obligations under the Federal Rules, as well as defendant's discovery requests encompassing these Affidavits. In response, plaintiffs contend that the Affidavits "were at all times the work product of their counsel, and all proper objections were timely raised which put Koch on notice that statements, file materials, notes, etc. relating to

---

[7] In their Initial Disclosures, plaintiffs did not list Walters or Chandler as individuals who would support their claims. On January 11, 2008, defendant served its Interrogatories and Request for Production on plaintiffs, requesting, *inter alia*: the identity of all persons having knowledge concerning the matters at issue in this case; whether any statements had been obtained from anyone concerning the matters at issue in this case and if so, from whom; whether plaintiff ever complained to anyone about the machine at issue and if so, to whom; all statements taken of anyone having knowledge of relevant facts; all documents relied upon in answering the Interrogatories, and all documents supporting the allegations set forth in the complaint. Plaintiffs responded on February 14, 2008. In their responses, they identified Walters and Chandler as possible witnesses, but indicated that their current whereabouts were unknown; stated that Mr. Walker could not recall filing any formal complaints; asserted the attorney work product privilege with respect to the interrogatory asking whether there were any statements taken of anyone having knowledge of relevant facts; and stated in response to a similar document request, without objection, that there were no such documents. *See* ecf doc. no. 86-3, 86-4. Plaintiffs then served Supplemental Responses [81-16] to the Interrogatories and Request for Production on May 30, in which they still listed Walters and Chandler's whereabouts as unknown, and did not supplement their responses to Interrogatories 15 or 25. On July 10, plaintiffs supplemented their responses to defendant's Request for Production only. However, plaintiffs did not produce the Affidavits, even though they had been in existence for over two weeks. Nor did plaintiffs produce an additional privilege log identifying the Affidavits. On August 7, 2008, plaintiffs' counsel deposed one of defendant's employees, as well as one of defendant's witnesses, and based on the questions asked of the witnesses by plaintiffs' counsel, it appears to be fairly clear that the Affidavits were in plaintiffs' counsel's possession and formed the basis of several of his questions.

the Plaintiffs' investigation of this case would not be produced." Plaintiffs aver that the reason the Affidavits were ultimately produced to defendant was because they were simultaneously given to their experts for review in preparation of their supplemental reports. Plaintiffs also argue that the identities of the affiants were known to both parties throughout the discovery process, and that defendant was provided all information known by plaintiffs about these witnesses and could have attempted to locate and interview them, subpoena documents or information from their last known employer (Howard Industries), or subpoena them for a deposition. Plaintiffs argue that defendant could still attempt to contact these witnesses and interview them in advance of trial.[8]

The work product doctrine is codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, which provides that a party generally cannot discover documents "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney...)." *See also In re Vioxx Products Liability Litigation*, 2007 WL 2309877, at * 19 (E.D. La. Aug. 14, 2007) ("The doctrine of work product...gives a qualified immunity to communications that are created in preparation for litigation."). The doctrine has its origins in the Supreme Court's decision in *Hickman v. Taylor*, 329 U.S. 495, 511 (1947), where the court explained that the purpose of the doctrine is to protect an attorney's mental impressions, legal theories and strategies as he prepares his client's case. However, not "all written materials obtained or prepared by an adversary's counsel with any eye toward litigation are necessarily free from discovery in all cases. Where relevant and non-

---

[8] This argument is unconvincing. Disclosure of the Affidavits on the discovery deadline necessarily precludes a deposition of affiants and leaves the defendant without any avenue to compel their testimony.

privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had." *Id.*

The basis for plaintiffs' claim of work product protection is that their counsel met with the affiants and discussed the subject matter of this lawsuit and after the meeting, plaintiffs' counsel drafted memoranda in affidavit form, which the affiants reviewed for accuracy and then signed. However, although the Affidavits may be trial preparation materials within the meaning of Rule 26(b)(3), the court is not convinced that they are the types of materials immune from disclosure. The Affidavits merely recite relevant facts within the affiants' personal knowledge, rather than revealing an attorney's mental impressions or legal strategy.[9] *See EEOC v. Jamal & Kamal, Inc.*, 2006 WL 2690226, at * 2 (E.D. La. Sept. 18, 2006) (stating that work product doctrine "does not extend to the underlying facts relevant to the litigation") (*citing Upjohn*, 449 U.S. at 395-96); *Gilmore v. Stalder*, 2008 WL 2097162, at * 4 (W.D. La. May 16, 2008) (rejecting work product privilege for affidavits containing no attorney impressions, legal theories or strategies, but merely setting forth facts, and striking affidavits for failure to produce them

---

[9] In the Chandler Affidavit [81-2], Mr. Chandler describes his position and responsibilities as Senior Foreman at Howard Industries; describes the means of access to two other washers (not manufactured by defendant); states that he has worked on the Koch SPM; states that he never liked its fixed ladder because he thought it was unsafe; and avers that to the best of his knowledge, Howard Industries relies on manufacturers to design and build safe equipment. In the Walters Affidavit [81-2], Mr. Walters describes his position and responsibilities as Maintenance Foreman/Supervisor at Howard Industries; states that he helped design and build one of the other washers at Howard Industries and that it was designed to be OSHA compliant and safe for employees; avers that he was present at the start-up of the Koch SPM, and that he does not recall any training of Howard Industries employees by Koch, nor did he ever receive a training or operations manual; states that the Koch SPM required daily maintenance checks; gives his opinion that the ladder and door of the Koch SPM were difficult to use and unsafe; recalls plaintiff telling him that he thought the ladder was awkward to climb and the door was hard to open; and states that Howard Industries was cited with an OSHA violation for this washer.

during discovery).  The fact that counsel for plaintiffs drafted the Affidavits (as is generally the case for affidavits prepared in litigation) does not make them attorney work product immune from disclosure.  "An affidavit, after all, purports to be a statement of facts within the personal knowledge of the witness, and not an expression of the opinion of counsel."[10]  *Infosystems, Inc. v. Ceridian Corp.*, 197 F.R.D. 303, 306-07 (E.D. Mich. Nov. 17, 2000) (concluding that even *draft* affidavits of a non-party witness are not work product); *see also Gilmore*, *supra*; *Tuttle v. Tyco Elecs. Installation Servs.*, 2007 WL 4561530, at * 2 (S.D. Ohio Dec. 21, 2007) (stating that "[a]ffidavits are normally not protected by the work product doctrine" and, therefore, rejecting claim of privilege with respect to non-party affidavits) (*citing Infosystems*, 197 F.R.D. at 306); *cf. Young v. California*, 2007 WL 2900539, at * 1 (S.D. Cal. Oct. 1, 2007) ("Questionnaires completed by third persons are not work product. The documents at issue are the verbatim statements of witnesses.  They are the factual observations of percipient witnesses, not the thoughts or impressions of counsel.") (citation omitted); *Schipp v. Gen'l Motors Corp.*, 457 F.Supp. 2d 917, 924 (E.D. Ark. 2006) "holding that "any verbatim non-party witness statements are neither privileged nor work product and must be produced.") (citation omitted); *Dobbs v. Lamonts Apparel, Inc.*, 155 F.R.D. 650, 653 (D. Alaska Mar. 23, 1994) (holding that a verbatim witness statement, even once solicited by counsel, is not protected by work product:  "What counsel are entitled to protect is their work and their thoughts and their analysis of the case, not the knowledge possessed by third parties.").

Regardless of whether the Affidavits were appropriately withheld as attorney work

---

[10] Indeed, at the beginning of both Affidavits, each affiant states:  "I am making this affidavit based upon my personal knowledge."

product, plaintiffs clearly were under an obligation to identify them in a privilege log. Rule 26(b)(5)(A) provides that where a party withholds documents under a privilege claim, the party must expressly make the claim, and must "describe the nature of the documents...not produced or disclosed–and do so in a manner that...will enable other parties to assess the claim." Local Rule 26.1(A)(1)(c) explicitly mandates that a privilege log must contain, at the very least, the following details: name of the document; description of document; date; author(s); recipient(s); and nature of the privilege. The only privilege log provided by plaintiffs [86-5] fails to disclose the Affidavits. Failure to provide the required privilege log subjects the withholding party to sanctions under Rule 37 of the Federal Rules of Civil Procedure. *Id.* Rule 37(c)(1) provides, in pertinent part, that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

     Moreover, under Rule 26(e), parties have an affirmative duty to timely supplement disclosures previously made where those disclosures are incomplete or incorrect and this additional information has not otherwise been made known to the other party during the discovery process. Clearly, at some point prior to June 23 and 24, the date the Affidavits were sworn to, plaintiffs' counsel became aware of the affiants' whereabouts, and should have supplemented their earlier interrogatory responses accordingly. In addition, plaintiffs should not have waited two months - until the close of discovery - to supplement their discovery responses to identify the Affidavits, or they should have seasonably supplemented their privilege log to include the Affidavits.

This court has broad discretion to exercise its various sanctioning powers. *Topalian v. Ehrman*, 3 F.3d 931, 934 (5th Cir. 1993); *see also Shipes v. Trinity Indus.*, 987 F.2d 311, 323 (5th Cir. 1993) ("The imposition of [discovery] sanctions is a matter of discretion for the district court.") (citation omitted).  The Fifth Circuit has held that the court's discretion with respect to striking witnesses must be guided by the consideration of four factors: (1)  the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice. *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990) (citations omitted).

As discussed above, the existence of the Affidavits was not made known to defendant until the very last day of discovery, despite the fact that they were in plaintiffs' possession for two months prior, and despite the fact that plaintiffs had supplemented their discovery responses several times during this time period.  Plaintiffs did not seasonably supplement their interrogatory responses to provide the affiants' addresses so that defendant might easily locate them.  Nor did plaintiffs provide a privilege log to defendants identifying the Affidavits.  These rule violations could certainly justify striking the Affidavits.  Nevertheless, as Mr. Chandler and Mr. Walters were identified by plaintiffs as potential witnesses on February 14, 2008, in plaintiffs' original responses to defendant's Interrogatories and Request for Production of Documents, the court will not strike the Chandler or Walters Affidavits.  However, plaintiffs will gain no advantage by serving last-minute disclosures and supplementation of discovery responses and by not properly identifying withheld documents in a privilege log.  To ensure that defendant is not prejudiced by plaintiffs' conduct, the court shall extend the discovery deadline for a reasonable time for defendant to depose the two affiants (and for the parties to conduct the other

limited discovery set forth in this Order).

Emergency Motion to Exclude Plaintiffs' Experts' Supplemental Reports

On May 30, 2008, plaintiffs timely designated Michael Frenzel and Andrew McPhate as expert witnesses and served their expert reports. On June 25, prior to defendant's deposition of plaintiffs' experts and prior to defendant's disclosure of experts, Frenzel provided a supplemental report. On July 16, 2008, defendant designated Wilder Allen and Alan Reynolds as their experts and submitted their expert reports.[11] On the evening of the discovery cutoff deadline, on August 29, 2008, plaintiffs emailed supplemental reports from both Frenzel and McPhate[12] to defendant's counsel.

In this motion, defendant seeks to have stricken Frenzel's and McPhate's supplemental expert reports. Defendant argues that because these supplemental reports were submitted after the deadline for expert designations (although before the discovery cutoff deadline), they were not timely submitted.

Rule 26(a)(2)(D) provides that a party must supplement its expert disclosures when required under Rule 26(e). *See also* Local Rule 26.1(A)(2)(e) ("A party is required to supplement an expert's opinion in accordance with Fed. R. Civ. P. 26(e)."). Rule 26(e)(1) requires parties to supplement or correct their disclosures "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or

---

[11] Only Wilder Allen's deposition could be scheduled prior to the discovery cutoff deadline. He was deposed on August 7, 2008. By agreement of the parties, Alan Reynolds' deposition was re-scheduled for September 22, 2008.

[12] McPhate lists as one of the bases of his Supplemental Report the affidavits of David Walters and Paul Chandler, which are the subject of a separate motion to strike, discussed *supra*.

corrective information has not otherwise been made known to the other parties during the discovery process or in writing." With respect to an expert witness, Rule 26(e)(2) states that the "duty to supplement extends both to information included in the report and to information given during the expert's deposition," and that such supplementation "must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Under Rule 26(a)(3), pretrial disclosures[13] are due "at least 30 days before trial," unless ordered otherwise by the court. There is nothing in this court's Scheduling Order addressing when the parties' pretrial disclosures are due. Local Rule 26.1(A)(5) states that, pursuant to Rule 26(e), parties are under a duty to supplement their disclosures "at appropriate intervals...and in no event later than the discovery cutoff established by the scheduling order."

     The court finds that under the various applicable rules, plaintiffs' supplemental expert reports were arguably timely, as they were submitted prior to the discovery cutoff established by this court's amended Scheduling Order, and more than thirty days prior to trial. Accordingly, the supplemental expert reports will not be stricken. However, the inquiry does not end there. Defendant would be prejudiced by these supplemental expert reports served on the eve of the discovery cutoff, as their experts have no opportunity to respond, and at least one of plaintiffs' expert's supplemental reports relies upon the Walters and Chandler Affidavits - which, as discussed *supra*, were not produced to defendant until the last day of discovery, when the supplemental expert reports were produced. Thus, the discovery deadline shall be extended briefly, to eliminate prejudice to the defendant. During this extended discovery period,

---

[13] This consists of information about witnesses, deposition testimony and exhibits to be offered at trial.

plaintiffs' expert witnesses may be re-deposed by defendant, at plaintiffs' cost, including reasonable attorney's fees.[14] At the conclusion of these depositions, defendant's experts shall be afforded a reasonable time to supplement their expert reports, if necessary.

Plaintiffs' last-minute disclosures and supplementation, significant changes to prior sworn deposition testimony, and failure to identify privileged materials are troubling. Without more, it is difficult to determine whether this course of conduct was an improper tactical effort to thwart the discovery process in order to gain an advantage, whether it resulted from mere lapses in attention to the case or otherwise. Nevertheless, the result is an unacceptable combination of increased expense and delay in the resolution of this matter. Plaintiffs will shoulder these additional expenses as set forth herein. On balance, the shifting of costs and the limited reopening of discovery as set forth herein appear to provide a remedy that will eliminate any advantage or significant prejudice from the conduct at issue.

IT IS, THEREFORE, ORDERED and ADJUDGED that:

1. The discovery deadline is extended until November 1, 2008, for the following limited discovery:

> a) Defendant may re-open Mr. Walker's deposition for the limited purposes set forth *supra* (with all costs, expenses and reasonable attorney's fees incurred by defendant to be paid by plaintiffs);
>
> b) Defendant may depose David Walters and Paul Chandler;

---

[14] Apparently plaintiffs did not share the Affidavits (sworn on June 23 and 24, 2008) with their own experts until *after* the defendant had incurred the costs, expenses and attorney's fees involving in taking the deposition of plaintiffs' experts (on July 8, 2008). Accordingly, cost-shifting is appropriate.

> c) Plaintiffs' expert witnesses may be re-deposed by defendant (also with all costs, expenses and reasonable attorney's fees incurred by defendant, as well as the experts' fees and expenses, to be paid by plaintiffs); and
>
> d) Plaintiffs may take the deposition of defendant's expert, Alan Reynolds.

2. At the conclusion of this discovery, defendant's experts shall have thirty (30) days - until November 30, 2008 - to supplement their expert reports, if necessary, as a result of the additional discovery allowed in this Order.

3. The motions deadline is re-set for December 15, 2008.

4. As the additional discovery required by plaintiffs' conduct will not allow the trial to take place as scheduled, the trial of this matter is continued and the pretrial conference is cancelled. Both will be re-set at the status and settlement conference scheduled for October 7, 2008, as set forth in paragraph 9 *infra*.

5. Defendant's Motion to Strike Joseph Walker's Proposed Deposition Changes and Request for Hearing [75] is denied. The errata sheet will not be stricken. Mr. Walker's original answers, the new answers on his errata sheet and any new testimony given at the re-opening of his deposition will remain in the transcript and may be used in any manner allowed by the applicable rules. As set forth in paragraph 1 *supra*, Mr. Walker's deposition may be reopened by defendant.

6. Defendant's Emergency Motion to Strike Untimely Affidavits, to Exclude Testimony and for Hearing [81] is denied. The Affidavits will not be stricken. Defendant may depose these affiants, as set forth above.

7. Defendant's Emergency Motion to Exclude Plaintiffs' Experts' Supplemental Reports [82] is denied. The Supplemental Reports will not be stricken. Plaintiffs' expert witnesses may be re-deposed by defendant, as set forth in paragraph 1 *supra* (with all with all costs, expenses and reasonable attorney's and experts' fees to be paid by plaintiffs). At the conclusion of the additional discovery set forth herein, defendant's experts shall have until November 30, 2008 - to supplement their expert reports, if necessary.

8. Plaintiffs' Motion for Short Extension of Time [76] is granted. Mr. Reynolds may be deposed during the limited extension of the discovery period set forth in this Order.

9. A settlement conference will be held before the undersigned at 9:00 a.m. on October 7, 2008 in Courtroom No. 1 of the William E. Colmer Federal Building in Hattiesburg, Mississippi. Each party must submit a confidential settlement memorandum to the court at least three (3) days prior to the conference. Each side must have the client or a client representative present with full settlement authority.

SO ORDERED on this the 18th day of September, 2008.

s/ Michael T. Parker
United States Magistrate Judge