**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**HATTIESBURG DIVISION**

JOSEPH R. WALKER and
DONNA WALKER                                                    PLAINTIFFS

v.                                              CIVIL ACTION # 2:07cv274-KS-MTP

GEORGE KOCH SONS, INC. and
JOHN DOES 1 through 10                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on the motion to exclude testimony of Plaintiffs' expert

witnesses [Doc. #105] (December 15, 2008) filed by Defendant George Koch Sons, Inc.

("Koch").  Koch seeks the exclusion of the opinion testimony of Andrew McPhate and Michael

Frenzel.  For reasons set forth below, the motion should be **granted in part**, **denied in part**, and

the Court **reserves judgment in part**.

Also before the Court is the motion to exclude testimony of Defendants' expert witnesses,

or in the alternative to limit expert opinion [Doc. #109] (December 15, 2008), filed by the

Plaintiffs, Joseph and Donna Walker.  The Plaintiffs seek exclusion of the opinion testimony of

Wilder Allen and Alan Reynolds.  For reasons to follow, the motion should be **granted in part**,

**denied in part**, and the Court **reserves judgment in part**.

## I. FACTUAL BACKGROUND

Plaintiff Joseph Walker alleges that he sustained injuries at his place of employment

(Howard Industries' Laurel, Mississippi plant) while standing on a fixed ladder manufactured

and designed by Koch. [Doc. #1-3 at ¶ 12] (October 23, 2007); Pl.s' Br. at ¶ 4 [Doc. #122] (January 15, 2009). Koch designed the ladder to provide access to a transformer washer, also known as a surface preparation machine ("SPM") at Howard Industries. Walker alleges that he slipped and fell while exiting the SPM. Pl.s' Br. at ¶ 1. Walker alleges that he was standing with both feet on the top rung of the ladder when he slipped. Walker Dep. I at 124 [Doc. #122-28] (January 15, 2009). Just before falling, Walker had attempted to close the door to the SPM, which required that he lean backward on the ladder to avoid the swinging door. *Id.* While closing the door – with his right hand on the door and his left on the safety rail attached to the ladder – he slipped and fell. *Id.* Walker alleges that he caught himself by wrapping his left elbow around the safety rail and that this caused him to sustain injuries to his arm. *Id.*

Prior to the fall, Walker had worked on the SPM for five years. *Id.* at 127. He had entered and exited the SPM via the ladder thousands of times. *Id.* Walker had never previously been injured using the ladder and, from the evidence presented, no other Howard Industries employee has been injured using the ladder. Page Dep. at 180 [Doc. # 107-2] (December 15, 2008). Walker had, however, realized that the act of closing the door while standing on the ladder was "awkward" and had previously slipped while standing on the ladder. [Doc. #107-16]. Walker knew that his shoes would be "exposed to and moistened by" the liquids in the SPM. *Id.* Walker had complained to a maintenance supervisor at Howard Industries, David Walters, about the awkward nature of using the ladder. Walters Aff. at ¶ 15 [Doc. #107-22]. Although Walters instructed Walker to report his complaint to Jason Page, who was the manufacturing engineer at Howard Industries in charge of the SPM project, Walker neglected to

do so.  Walker Dep. I at 111 [Doc. #107-3].

Koch designs, manufactures, installs, and services SPMs throughout the United States.

Pl.s' Br. at ¶ 3.  Koch designed and engineered the SPM and components to be used at Howard

Industries.  The ladder from which Walker fell was one of several designed and manufactured by

Koch to be used to access the SPM at Howard Industries' plant.  The ladder allows Howard

Industries' employees to access an elevated door that leads into the SPM.  The door is 64 and

one-half inches above the ground and swings out above the ladder.  Pl.s' Br. at ¶ 6.  The SPM

door is equipped with two hinges, two latches, a door handle located 96 inches above the floor,

and gasketing to prevent chemical leaks.  *Id.*  The top rung of the ladder is approximately four

feet above the ground.  *Id.*

The Plaintiffs filed suit on September 19, 2007, alleging a number of Mississippi Product

Liability Act ("MPLA") claims, negligence claims, and breach of warranty claims.  The Plaintiffs

have designated several experts, including the two at issue in the instant motion: Andrew

McPhate and Michael Frenzel.  [Doc. #48] (May 30, 2008); [Doc. #70] (August 4, 2008); [Doc.

#98] (November 5, 2008).  McPhate wrote an initial report[1] of his opinions on May 29, 2008,

[Doc. #49-5] (May 30, 2008), and wrote a supplemental report[2] on August 29, 2008.  [Doc. #105-

2] (December 15, 2008).  Frenzel wrote an initial report[3] on May 29, 2008, [Doc. #48-2] (May

---

[1] McPhate's initial report is cited in this Opinion as "McPhate Opin."

[2] McPhate's supplemental report is cited in this Opinion as "McPhate Supp. Opin."

[3] Frenzel's initial report is cited in this Opinion as "Frenzel Opin."

30, 2008), and submitted supplemental reports on June 25, 2008,[4] and August 28, 2008,[5] respectively.[6]  [Doc. #105-2] (December 15, 2008); *Id.*  Koch has likewise designated several experts.  [Doc. #65] (July 16, 2008).  The Koch experts at issue in the Plaintiffs' motion are Wilder Allen and Alan Reynolds.  *See* [Doc. #109-2] (December 15, 2008) (Allen Opin.); [Doc. #109-3] (Reynolds' Opin.).

## II. STANDARD OF REVIEW

Federal Rule of Evidence 702, amended post-*Daubert* in 2000, provides that a witness "qualified as an expert … may testify … in the form of an opinion … if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  *See generally Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).  "*Daubert . . .* assigned the trial court a gatekeeper role to ensure such testimony is both reliable and relevant."  *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 194 (5th Cir. 2006).  "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony."  *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147

---

[4] Frenzel's first supplemental report is cited in this Opinion as "Frenzel Supp. Opin."

[5] Frenzel's second supplemental report is cited in this opinion as "Frenzel Supp. II Opin."

[6] The fact that both experts authored their original reports on the same date and their supplemental reports one day apart is not coincidental.  Both McPhate and Frenzel confessed at their depositions that Plaintiffs' counsel had written a substantial portion of their opinions.  *E.g.*, McPhate Dep. I at 12-13 [Doc. #124-11] (January 16, 2009); Frenzel Dep. I at 224-26 [Doc. #124-5] (January 16, 2009).

(1999)).

"Many factors bear on the inquiry into the reliability of scientific and other expert testimony.  In *Daubert*, the Supreme Court offered an illustrative, but not an exhaustive, list of factors that district courts may use in evaluating the reliability of expert testimony."  *Id.*  These factors include:

(1) whether the expert's theory can be or has been tested;

(2) whether the theory has been subject to peer review and publication;

(3) the known or potential rate of error of a technique or theory when applied;

(4) the existence and maintenance of standards and controls; and

(5) the degree to which the technique or theory has been generally accepted in the scientific community.

*Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 275 (5th Cir. 1998) (en banc).  Subsequently, in *Kumho Tire Co.*, the Supreme Court noted that the *Daubert* analysis is "flexible," and that "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."  526 U.S. at 150.  The district court's responsibility is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Id.* at 152.

"Although the *Daubert* analysis is applied to ensure expert witnesses have employed reliable principles and methods in reaching their conclusions, the test does not judge the expert conclusions themselves."  *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004).

5

"[T]he trial court's role . . . is not intended to serve as a replacement for the adversary system: 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (quoting *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996)). Nonetheless, "[t]he proponent of expert testimony . . . has the burden of showing that the testimony is reliable," *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004), and must establish the admissibility requirements "by a preponderance of the evidence." *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003).

### III. APPLICATION AND ANALYSIS

In the pending motions, Koch seeks to exclude the testimony of both McPhate and Frenzel, and the Plaintiffs seek to exclude the testimony of both Allen and Reynolds. The Court will evaluate the proposed testimony of each witness in turn.

#### A. Plaintiffs' Expert: Andrew McPhate

McPhate is a professional mechanical engineer with over forty years of experience in mechanical design, analysis, and manufacture. McPhate Opin. at 1 [Doc. #49-5] (May 30, 2008). McPhate's curriculum vitae reveals that he studied engineering and related subjects in school, receiving degrees from the US Navy School for Engineman, Louisiana Polytechnic Institute, Louisiana State University, and Stanford University. Exh. 2 [Doc. #49-5]. McPhate has a number of professional memberships and has worked over the past decades in many positions

indicating knowledge in the field of engineering including as a professional engineer, mechanical consultant, and professor of engineering. *Id.* McPhate has authored numerous publications. *Id.*

### 1. McPhate's Opinions and Methodology

McPhate proposes to testify that the door to the SPM "was designed and configured to be safely opened and closed by a person standing on a platform at a sufficiently elevated height above the floor." McPhate Supp. Opin. at 1 [Doc. #105-2]. The ladder manufactured by Koch had no such platform. McPhate reached this opinion after studying factors such as the height of the door, the necessity for the door to remain tightly closed, the latches on the door, the pressure required to close the door, and the necessity for equal distribution of pressure to close the door. *Id.* at 2.

McPhate also proposes to testify that "[a] fixed stair with [a] landing could have been installed at each of the six doors on the SPM for a cost significantly less than $500 per door." *Id.* at 3. McPhate reached this conclusion after examining the SPM and researching the cost of the materials needed to implement such an access design. McPhate will testify that this alternative design "would not have altered the operation or usefulness of the [SPM]." McPhate Opin. at 1.

### 2. Analysis

The Defendants raise three objections regarding McPhate's proposed testimony.[7] They object (1) to the fact that Plaintiffs' counsel wrote a substantial portion of McPhate's opinion; (2) to McPhate's failure to conduct more testing – for example, of the SPM, the ladder, and the

---

[7] Defendants' brief analyzes McPhate's and Frenzel's opinions jointly to some extent, so the Court will address those objections that seem applicable to McPhate's opinion. *See* Def.s' Br. at 12-15 [Doc. #106] (December 15, 2008).

shoes worn by Walker on the day of the accident; and (3) to McPhate's failure to make any

drawings or to perform calculations supporting the opinion that an alternative feasible design

existed.

With regard to the first objection, the Court believes the authorship of McPhate's opinion

by counsel, pertains more to the credibility of the opinion than to its admissibility. However,

McPhate will not be permitted to state legal conclusions simply inserted into his opinion by

Plaintiff's counsel especially if the conclusion has no logical connection to his expertise or to his

methodology.[8]

Concerning the second objection, the Court rejects the argument that McPhate's

methodology is unreliable due to the lack of testing conducted. McPhate has not stated any

opinions relating to the cause of Walker's injury. Instead, McPhate proposes to testify about the

design of the SPM and the inferences he has drawn based on the design. None of the testing

proposed by the Defendants seems necessary for McPhate's evaluation of the design of the SPM

or inferences based thereon. Consequently, this argument does not shake the Court's confidence

in the reliability of McPhate's methodology. It should go without saying, however, that the

adversarial system will permit Defendants' counsel to raise questions about the lack of testing

during cross-examination.

The third objection raised by the Defendants has more merit. The Defendants argue that

_____

[8] McPhate states two opinions that are unsupported (in his report) with any explanation
for how he reached them: (1) "Koch's [SPM] did not comply with the state of the art for design
and manufacture of machines such as the [SPM] in 1997 and 1998"; (2) "The [SPM] did not
comply with the industry and custom and practice for the design and manufacture of machines
such as the [SPM] in 1997 and 1998." McPhate Opin. at 1.

8

this case is controlled by *Watkins v. Telsmith, Inc.*, 121 F.3d 984 (5th Cir. 1997), in which the court upheld a trial court's decision to exclude expert testimony. In *Watkins*, the expert sought to provide opinion testimony regarding an alternative design for a relatively complex piece of machinery. 121 F.3d at 992. In *Watkins*, the expert was proposing to testify about the unsafe condition of a conveyor and to propose an alternative design involving, "supporting the conveyor with two hydraulic cylinders . . . [and] using side posts or 'outriggers' to hold the conveyor up in the event the [proposed] wire rope failed." *Id.* at 986. In upholding the trial court's decision to exclude the testimony, the *Watkins* court reasoned that "the proper methodology for proposing alternative designs includes more than conceptualizing possibilities," but qualified the opinion with the dictum that "[t]his is not to say that alternative product designs must always be tested by a plaintiff's expert." *Id.* at 992.

Here, McPhate indeed seems to have devoted less attention to the feasibility of the proposed alternative design than he devoted to his analysis of the design of the SPM as manufactured. *Compare* McPhate Opin.; *with* McPhate Supp. Opin. McPhate lists no calculations performed regarding feasibility, other than with regard to cost. Moreover, the Court harbors some concern as to whether McPhate's engineering expertise qualifies him to testify as to the feasibility of fixed stairs and a platform in this industrial setting.

Given the ubiquity and relative simplicity of stairs and platforms, the Court will not hold McPhate to the more stringent standard seemingly applied in *Watkins*. Whereas machinery involving hydraulics would likely require testing to ensure the design would allow it to function properly and safely, the same is not true (generally) regarding stairs and platforms. It is not as if

McPhate is proposing a novel contraption with an unknown capacity to function properly. Instead, the issue of feasibility in this case will pertain more to whether a set of fixed stairs and a platform would be feasible in the setting at Howard Industries. *Betts v. GMC*, No. 3:04-CV-169, 2008 U.S. Dist. LEXIS 54350, *21 (N.D. Miss. July 16, 2008) ("Though an expert must go beyond 'conceptual suggestions' in proposing an alternative design, there is no requirement that the expert actually design, produce, and test their proposed design on the specific product at issue") (citing *Guy*, 394 F.3d at 327); *c.f., e.g.*, *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 76 (S.D.N.Y. 2001) ("While testing is not an 'absolute prerequisite' for an expert's theory of . . . alternative design to be admissible in a design defect case . . . [establishing feasibility of alternative design] almost always requires testing of a hypothesis *if the expert cannot point to an existing design in the marketplace*" (emphasis added) (internal citation omitted)). This might require, for example, consideration of whether there was sufficient space near the SPM for stairs and a platform, but does not require a demonstration that fixed stairs and a platform can be feasible generally. McPhate has considered factors such as cost and space in support of his proposed alternative design, albeit in a rather cursory fashion. As a result, the Court will not exclude McPhate's testimony on the subject of feasible alternative design, but certainly reserves the right to do so in the event that an improper foundation for his opinions is laid at trial.

### B. Plaintiffs' Expert: Michael Frenzel

Frenzel is a "Certified Safety Professional." Frenzel Opin. at 1 [Doc. #48-2] (May 30, 2008). Frenzel's curriculum vitae indicates that he has been "directing and managing safety,

training, personnel and resource management programs" for more than thirty years. [Doc. #48-2].

## 1. Frenzel's Opinion and Methodology

Frenzel proposes to testify that the ladder manufactured by Koch was designed in a manner that created a dangerous situation for Howard Industries employees who used the ladder to access the SPM. Frenzel is prepared to testify that the ladder violated regulations of the Occupational Safety and Health Administration ("OSHA") as well as standards of the American National Standards Institute ("ANSI"). Frenzel opines that these regulations and standards required the construction of fixed stairs with a platform for accessing the SPM. Finally, Frenzel proposes to testify that the "root cause" of Walker's injuries was Koch's failure to manufacture fixed stairs and a platform to access the SPM.

Frenzel used two methods to ascertain that the "root cause" of Walker's injuries.[9] Frenzel Supp. II Opin. at 6-8 [Doc. #105-2] (December 15, 2008). Frenzel employed the so-called "5 Whys" and "Three Levels of Accident Causation Model" methods.

Frenzel employed the "5 Whys" method as follows:

Mr. Walker was injured.
Why? He fell from the ladder.
Why? He lost his balance.
Why? He was in an awkward position.
Why? There was no place to stand while opening/closing the door.

---

[9] In his second supplemental opinion, Frenzel listed the five "most common methods or investigative tools" in industrial accident investigation. Frenzel Supp. II Opin. at 6. Frenzel employed, however, only two of the methods. The five methods Frenzel listed are: (1) The three levels of accident causation model; (2) The sequence of events or the why method (5 Whys); (3) The Causal Factors Guide; (4) The Job Hazard Analysis; and (5) Change Analysis.

Why? Safe access was not considered in design per the OSHA and ANSI Standards.

*Id.* at p.7.

Frenzel explained the "Three Levels of Accident Causation Model" as follows:

Using the Three Levels of Accident Causation Model. The basic or root cause of an accident is the system failure that permitted, encouraged, allowed, failed to identify and correct, failed to follow-up on, failed to anticipate or predict – the unsafe act or condition – that preceded the release of energy (accident). *Stated another way, the basic or root cause allowed the 'at risk' behavior or unsafe conditions. The unsafe behavior / unsafe acts are symptoms of system failures.* Had Mr. Allen asked, what allowed, or encouraged Mr. Walker to act in an unsafe manner or to place himself at risk, and what is the best way to prevent this type behavior [sic], he would have concluded that it was the design of the access that encouraged or at least permitted the behavior. And, *if there had been steps and a platform, there would not have been an opportunity for at risk behavior. Thus, the poor design is the basic or root cause of the accident.*

Frenzel Supp. II Opin. at 7-8 (emphasis added).

Frenzel proposes to offer the opinions that the SPM "was not user friendly," "was not in compliance with ergonomic or user friendly principles," and "required the operator to place himself in awkward and dangerous positions." Frenzel Opin. at 1, 4-5. Frenzel also opines that "[i]t is dangerous to negotiate the opening and closing of a door while trying to climb, or while standing on a fixed vertical ladder." Frenzel Supp. Opin. at 1 [Doc. #105-2] (December 15, 2008).

## 2. Analysis

The Plaintiffs have the burden of demonstrating that Frenzel's testimony would be "the product of reliable principles and methods." FED. R. EVID. 702; *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc). In addition, even if the Court concludes that the methodology satisfies the requirement of Rule 702, the inquiry is not over. The Court must still

consider the applicability and effect of other evidentiary rules, such as Rule 403, which may operate to exclude Frenzel's testimony. *United States v. Posado*, 57 F.3d 428, 435 (5th Cir. 1995). Rule 403 states that otherwise relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Indeed, Rule 403 may be especially applicable when the method to be utilized by the expert is novel or controversial. *Posado*, 57 F.3d at 435.

The Court will evaluate Frenzel's methods separately, for if the Plaintiffs meet their burden of establishing either method's reliability, the second element of Rule 702 would be satisfied and the Court's Rule 403 concerns would likely be ameliorated. The Court harbors serious doubts as to the reliability of both methods, however.

Concerning the "5 Whys" method, the Court's primary concern is that the method seems unlikely to produce results that reliably pertain to relevant issues. *See* FED. R. EVID. 702 (testimony admissible if it will "assist the trier of fact to understand the evidence or to determine a fact in issue"). As Koch points out, this method seems incapable of reliably producing repeatable results. If ten people familiar with the facts of this case employed the "5 Whys" method, the Court is inclined to believe that each would likely produce different results.[10]

---

[10] For example, from the Court's review of the facts of the case and Frenzel's explanation of the "5 Whys" method, the following answers could have been provided:

Mr. Walker was injured.
Why? He slipped while standing on the ladder.
Why? His shoes were slippery.
Why? He had been working in the SPM which had water and chemicals inside it.
Why? The SPM is used to wash oil and grease from transformers.
Why? Howard Industries manufactures transformers.

Furthermore, the act of asking "why" five times, all but ensures that the answer reached will never point to assumption of risk or contributory negligence by a plaintiff. In other words, the method seems tailored to find policy causes rather than scientific causes for an accident. Again, while this may be appropriate in a policy situation, this Court is not tasked with setting policy – instead, a jury will be instructed to ascertain the proximate cause of Walker's injuries. The "5 Whys" method seems extremely ill-suited for assisting a trier of fact to determine the legal cause of an injury. Given these doubts, the Court must conclude that opinion testimony based on the "5 Whys" method would be unreliable and far more prejudicial than helpful.

These doubts are buttressed by the Plaintiffs' failure to establish that any of the factors suggested in *Daubert* would weigh in favor of a finding that the "5 Whys" method is reliable. The Plaintiffs have not established that the method (i) is generally accepted, (ii) has been subjected to peer review and publication, (iii) has been tested, (iv) has an acceptable known or potential rate of error, or (v) has standards controlling the method's operation. *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 351 (5th Cir. 2007); *see Kumho Tire Co.*, 526 U.S. at 151 ("some of *Daubert's* questions can help to evaluate the reliability even of experience-based testimony"). The Court believes that the factors are appropriately considered in this case and that each of them confirms this Court's doubts about the reliability of the "5 Whys" method.

Turning to Frenzel's use of the "Three Levels of Accident Causation Model," the Court

_____

The Court is not an expert in industrial safety and may have somehow misapplied the "5 Whys" method in reaching these answers. However, it was the Plaintiffs' burden to establish the reliability of this methodology, and the Court has located no information in the Plaintiffs' brief or in Frenzel's opinion reports that indicates why these answers might be any less appropriate than those produced by Frenzel.

harbors serious doubts regarding this methodology for similar reasons. As with the "5 Whys" method, the "Three Levels of Accident Causation Model" seems unlikely to produce results that reliably pertain to any issue relevant in this case. By Frenzel's own admission, the "Three Levels of Accident Causation Model" is not meant to discern whether any unsafe behavior proximately caused the accident, but is instead concerned with the policy failure that enabled such behavior (i.e., the "root cause"). Hence, as with the "5 Whys" method, use of the "Three Levels of Accident Causation Model" and the generation of a so-called "root cause" entails an undue risk of confusion that greatly outweighs its probative value. *See* FED. R. EVID. 403.

In addition, as with the "5 Whys" method, counsel for the Plaintiffs has failed to establish that any of the *Daubert* factors weigh in favor of permitting opinion testimony predicated on the "Three Levels of Accident Causation Model." The Plaintiffs have not established that the "Three Levels of Accident Causation Model" method (i) is generally accepted, (ii) has been subjected to peer review and publication, (iii) has been tested, (iv) has an acceptable known or potential rate of error, or (v) has standards controlling the method's operation. The Court believes that the factors are appropriately considered in evaluating the reliability of the "Three Levels of Accident Causation Model" method and finds that the factors confirm the Court's doubts about the method's reliability. As a result, the Court will exclude any opinion testimony predicated on the "Three Levels of Accident Causation Model" method.

Consequently, the Plaintiffs have failed to meet their burden of showing that Frenzel's testimony regarding "root cause" would be "the product of reliable principles and methods," as set required by Rule 702 of the Federal Rules of Evidence. Frenzel's proposed testimony

regarding the "root cause" of Walker's injuries should be excluded.

Apart from his opinions pertaining to "root cause" analysis, Frenzel has proposed to testify regarding several opinions that are not appropriate for Rule 702 expert testimony. Expert opinion testimony must "'serve[ ] to inform the jury about affairs not within the understanding of the average man.'" *United States v. Moore*, 997 F.2d 55, 57 (5th Cir. 1993). The Court recognizes that certain aspects of industrial safety will be outside the ordinary knowledge of a layperson. *Shoemake v. Rental Serv. Corp.*, No. 1:06-CV-426, 2008 U.S. Dist. LEXIS 9240, *6 (S.D.Miss. Jan. 22, 2008). However, this Court recognizes, as other courts have, "[e]xpert testimony is not needed to explain the impact of obvious hazards such as" "the impact of heavy clothing, *precarious footing*, a heavy work schedule, or cold weather." *Williams v. Union P.R. Co.*, No. 89-2964, 1992 U.S. Dist. LEXIS 19384, *5 (E.D.La. Dec. 14 1992) (emphasis added).

As set forth above, Frenzel proposes to testify of the precariousness involved in climbing the ladder, swinging open the door, climbing up and through the doorway, backing out onto the ladder, and swinging the door shut while leaning away from the SPM to avoid the door. The Court does not believe expert testimony is needed to assist a jury in determining the dangers involved in these activities. *C.f. London v. MAC Corp. of Am.*, 44 F.3d 316 (5th Cir. 1995) (upholding trial court's decision to bar Frenzel from testifying "that it would not be safe to work on top of a gearbox cover ten feet off the ground" because it was "common knowledge"). Lay jurors will have used a ladder or at least will be familiar with the use of ladders and their corresponding dangers. Moreover, the Plaintiff (who has climbed the ladder routinely during his years of employment at Howard Industries) can provide lay testimony as to his experiences using

16

the ladder and will be able to describe how awkward some of the movements on the ladder can be. Lay jurors do not need (and will not be assisted by) an expert testifying that awkward movements on top of a ladder are dangerous. Because these opinions do not concern matters beyond the understanding of lay persons, the Court cannot permit Frenzel to provide Rule 702 expert testimony on this subject.

Finally, Frenzel proposes to testify regarding the alleged OSHA and ANSI violations inherent in the manufacture of the ladder. "[E]vidence of OSHA regulations is not admissible to show negligence." *Sumrall v. Mississippi Power Co.*, 693 So. 2d 359, 367 (Miss. 1997).[11] "Such regulations are, however, admissible to show the reasonableness of a defendant's actions or whether those actions were consistent with industry standards." *Certain Underwriters at Lloyds' v. Coastal Builders, Inc.*, No. 3:05-CV-689, 2007 U.S. Dist. LEXIS 66417, *10 (S.D.Miss. Sept. 7, 2007).

The parties, for the most part, neglected to address the circumstances in which an expert

---

[11] Generally, evidentiary matters are governed by federal, rather than state law. *E.g.*, *Conway v. Chem. Leaman Tank Lines, Inc.*, 540 F.2d 837, 839 (5th Cir. 1976) (citing 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2405, at 326-27 (1971)). However, "it must be remembered that some matters often thought of as part of the law of evidence" remain governed by state law, including "circumstances in which a question of admissibility of evidence is so intertwined with a state substantive rule that the state rule excluding the evidence will be followed in order to give full effect to the state's substantive policy." *Id.* (quoting WRIGHT & MILLER, *supra*). The Mississippi Supreme Court's decision holding that OSHA regulations are inadmissible to show negligence was due primarily to the fact that "the Mississippi Legislature has specifically declined to give OSHA regulations compulsory force under state law." *Sumrall*, 693 So. 2d at 366 (citing MISS. CODE ANN. § 71-1-1(f) (1972)). Since the issue of admissibility is closely intertwined with state substantive law, the Court will follow Mississippi law governing the admissibility of OSHA regulations. *See Certain Underwriters at Lloyds' v. Coastal Builders, Inc.*, No. 3:05-CV-689, 2007 U.S. Dist. LEXIS 66417, *10 (S.D.Miss. Sept. 7, 2007).

should be allowed to opine as to whether an OSHA or ANSI standard has been violated.  Having reviewed a number of cases in which the issue has (at least tacitly) arisen, the Court concludes that such testimony is not always appropriate.  In particular, the Court concludes that such testimony should be excluded if it does not assist the jury "to understand the evidence or to determine a fact in issue."  FED. R. EVID. 702.  It follows that if an OSHA or ANSI standard is perfectly comprehensible by a lay juror, no expert testimony shall be admitted concerning whether the standard has been violated.  On the other hand, if, for example, the standard contains unfamiliar terminology, technical or confusing concepts, or otherwise requires familiarity to interpret or apply, expert testimony will be appropriate.  *C.f. Williams*, 1992 U.S. Dist. LEXIS 19384, at *6 (explaining that the expert could testify that a National Institute for Occupational Safety and Health standard had been violated because "[e]xpert testimony is necessary to convert the figure of 1,430 lbs. of compression into the maximum number of pounds for one worker to lift").

Here, Frenzel proposes to provide expert testimony concerning a number of OSHA and ANSI standards.  As will be discussed below, Koch's experts seek to provide opinion testimony regarding many of the same standards.  Because the parties have not addressed the issue in detail, the Court will reserve its judgment on the issue.  The parties are instructed that expert testimony concerning OSHA or ANSI standards will be admitted at trial only if the standard is relevant to this case and the testimony would comply with Rule 702 as discussed above.  In addition, an expert can certainly provide opinion testimony that is based on the review of such standards, if the testimony is otherwise consistent with this Opinion, *Daubert*, and the Federal Rules of

Evidence.

## C. Koch's Expert: Wilder Allen

Allen is a "safety professional" with more than 34 years of experience. [Doc. #109-2].
He has held a number of positions in the field, including Safety Supervisor, Safety Manager,
Corporate Safety Manager, and OSHA Compliance Officer. Given these qualifications, and the
others listed on his curriculum vitae, the Court disagrees with the Plaintiffs' contention that Allen
lacks sufficient qualifications to testify under Rule 702 regarding OSHA standards.

### 1. Allen's Opinions and Methodology

Allen proposes to testify primarily about the ladder's compliance with OSHA standards.
*See* Allen Opin. In that regard, Allen proposes to testify that the ladder violated no applicable
OSHA standard with the exception of a "de minimis" violation of 29 C.F.R. 1910.27(d)(2)(iii).
Allen bases these opinions on his knowledge of OSHA Standards, his review of the ladder, and
his review of the evidence in this case.

In addition, Allen proposes to testify to various opinions concerning the danger involved
in using the ladder and to his opinion regarding the "root cause" of Walker's injuries. Allen
opines, for example, that there is "inherent danger" in the use of a ladder and that "the SPM was
not an 'unreasonably dangerous' piece of equipment to operate." *Id.* at 2, 4. Allen opines that
"the design of the [SPM] did not cause the Plaintiff . . . to fall from the ladder." *Id.* at 5. Other
than citing some record evidence, Allen provides no glimpse into the methodology or principles
supporting his opinions.

**2. Analysis**

In discussing Allen's proposed testimony, the Court will distinguish between Allen's opinions regarding OSHA Standards and all of his other opinions.

Concerning Allen's proposed testimony regarding compliance with OSHA or ANSI standards, the Court will reserve judgment consistent with the discussion concerning Frenzel's opinion above.

The Court will not permit Allen to testify as a Rule 702 expert concerning any of the other opinions posited in his report. The other opinions are completely unsubstantiated in that the Court would be forced to guess about the methodology or principles that support them. In fact, much of the opinion reads more like a closing argument than an expert opinion report, for example:

> In his deposition Mr. Walker stated that in the past he had felt awkward while performing the task of opening the door from the ladder. This should have been a warning for him to be more aware while using the ladder and to make his concerns known to the company management. . . .
>
> The design of the SPM ladder at issue did not cause this accident. The cause of the accident was the plaintiff's failure to exercise reasonable care on October 5, 2004. Not having a safe work procedure in place for accessing the SPM may have also contributed to the cause of the accident. However, this would assume the plaintiff would have followed such a procedure.

Allen Opin. at 3. Because Koch has completely failed to establish that Allen has employed reliable methods or principles in reaching his non-OSHA opinions, the Court must enforce Rule 702 and will limit Allen's testimony accordingly.

**D. Koch's Expert: Alan Reynolds**

Reynolds received a B.S. degree in chemical engineering from Oklahoma State

20

University and an M.B.A. from St. Ambrose University. [Doc. #109-3]. He has experience including employment as a Senior Consultant, Project Director, and Engineering Manager. *Id.* His experience has involved "troubleshooting unit-operating problems," and involvement in "cause and origin investigations." *Id.*

The Plaintiffs argue that Reynolds' testimony should be excluded because Reynolds lacks the qualifications to testify under Rule 702. Pl.s' Br. at 12-18 [Doc. #109] (December 15, 2008). The Plaintiffs note that Reynolds lacks formal OSHA training and that he is not a Certified Safety Professional. Having considered the parties' briefs, Reynolds' opinion report, and Reynolds' rèsumè, the Court has some concern regarding Reynolds' qualifications. However, because the qualifications necessary to provide expert testimony regarding particular OSHA standards have not been previously well-defined, the Court will permit Koch to lay a foundation for Reynolds' testimony at trial, and will reserve its judgment until then as to whether Reynolds' qualifications are sufficient.

Reynolds' opinions are primarily limited to whether the manufacture and design of the ladder violated OSHA standards. As such, the Court reserves its judgment concerning Reynolds' testimony consistent with the discussion concerning Frenzel's opinion above.

Reynolds' report contains some opinions concerning the enforceability of the contract between Koch and Howard Industries. For example, Reynolds opines that "the warranty provision of the contract . . . [had] expired" and that "Howard Industries was satisfied [with] the access ladder." Reynolds Opin. at 7 [Doc. #109-3]. The Court holds that Reynolds' opinions concerning the status or enforceability of any of the contract's provisions, including the warranty

provision, are improper.

# IV. CONCLUSION

For the reasons given above, the Court has reached the following conclusions: (1) Koch's motion to exclude the testimony of Andrew McPhate is denied except as to the two conclusory opinions listed above, *ante*, at 7 n.8, as to which the Court reserves judgment; (2) Koch's motion to exclude the testimony of Michael Frenzel is granted such that Frenzel's opinions are ordered excluded except for those pertaining to OSHA and ANSI regulations, as to which the Court reserves judgment; (3) Concerning Plaintiff's motion to exclude or limit the testimony of Wilder Allen, the Court denies the motion to the extent it is based on Allen's qualifications, grants the motion as to those opinions not pertaining to OSHA or ANSI standards, and otherwise reserves judgment; and (4) Concerning Plaintiff's motion to exclude or limit the testimony of Alan Reynolds, the Court grants the motion as to those opinions not pertaining to OSHA or ANSI standards, and otherwise reserves judgment.

IT IS, THEREFORE, ORDERED AND ADJUDGED that Koch's motion to exclude testimony of Plaintiffs' expert witnesses [Doc. #105] is **granted in part**, **denied in part**, and the Court **reserves judgment in part**.

IT IS, FURTHERMORE, ORDERED AND ADJUDGED that the Plaintiffs' motion is **granted in part**, **denied in part**, and the Court **reserves judgment in part**.

SO ORDERED AND ADJUDGED on this, the 27th day of March, 2009.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE

22