**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**


**JOSEPH R. WALKER and
DONNA WALKER**                                                                    **PLAINTIFFS**


**v.**                                                                **CIVIL ACTION # 2:07cv274-KS-MTP**


**GEORGE KOCH SONS, INC. and
JOHN DOES 1 through 10**                                                         **DEFENDANTS**


<u>**M**EMORANDUM **O**PINION AND **O**RDER</u>


     This cause is before the Court on the motion for summary judgment [Doc. #107] filed by

Defendant George Koch Sons, Inc. ("Koch").  The motion is opposed by Plaintiffs Joseph and

Donna Walker.  For reasons set forth below, the motion should be **granted in part** and **denied in**

**part**.


**I. F**ACTUAL **B**ACKGROUND[1]


     Plaintiff Joseph Walker alleges that he sustained injuries at his place of employment

(Howard Industries' Laurel, Mississippi plant) while standing on a fixed ladder manufactured

and designed by Koch in 1998.  [Doc. #1-3 at ¶ 12] (October 23, 2007); Pl.s' Br. at ¶ 4 [Doc.

#122] (January 15, 2009).  Koch designed the ladder to provide access to a transformer washer,

also known as a surface preparation machine ("SPM") at Howard Industries.  Walker alleges that

he slipped and fell while exiting the SPM on October 5, 2004.  Pl.s' Br. at ¶ 1.  Walker alleges

---

[1] This section contains undisputed facts with all inferences drawn in the Plaintiffs' favor,
except as otherwise noted.

that he was standing with both feet on the top rung of the ladder when he slipped. Walker Dep. I at 124 [Doc. #122-28] (January 15, 2009). Just before falling, Walker had attempted to close the door to the SPM, which required that he lean backward on the ladder to avoid the swinging door. *Id.* While closing the door – with his right hand on the door and his left on the safety rail attached to the ladder – he slipped and fell. *Id.* Walker alleges that he caught himself by wrapping his left elbow around the safety rail and that this caused him to sustain injuries to his arm. *Id.*

Prior to the fall, Walker had worked on the SPM for five years. *Id.* at 127. He had entered and exited the SPM via the ladder thousands of times. *Id.* Walker had never previously been injured using the ladder and, it seems, no other Howard Industries employee has been injured using the ladder. Page Dep. at 180 [Doc. # 107-2] (December 15, 2008). Walker had, however, realized that the act of closing the door while standing on the ladder was "awkward" and had previously slipped while standing on the ladder. [Doc. #107-16]. Walker knew that his shoes would be "exposed to and moistened by" the liquids in the SPM. *Id.* Walker had complained to a maintenance supervisor at Howard Industries, David Walters, about the awkward nature of using the ladder. Walters Aff. at ¶ 15 [Doc. #107-22]. Although Walters instructed Walker to report his complaint to Jason Page, who was the manufacturing engineer at Howard Industries in charge of the SPM project, Walker neglected to do so. Walker Dep. I at 111 [Doc. #107-3].

Koch designs, manufactures, installs, and services SPMs throughout the United States. Pl.s' Br. at ¶ 3. Koch designed and engineered the SPM and components to be used at Howard Industries. The ladder from which Walker fell was one of several designed and manufactured by

Koch to be used to access the SPM at Howard Industries' plant. The ladder allows Howard

Industries' employees to access an elevated door that leads into the SPM. The door is 64 and

one-half inches above the ground and swings out above the ladder. Pl.s' Br. at ¶ 6. The SPM

door is equipped with two hinges, two latches, a door handle located 96 inches above the floor,

and gasketing to prevent chemical leaks. *Id.* The top rung of the ladder is approximately four

feet above the ground. *Id.*

Koch provided a conditional warranty for the SPM, warranting that the SPM would be

"free from defects." [Doc. #107-9 at 20] (December 15, 2008). The contract stated that the

equipment would "be designed to comply with [Koch's] interpretations of current OSHA

regulations." *Id.* at 12. After Walker's injury, an OSHA investigator inspected the ladder and

cited Howard Industries due to the spacing of the rungs. [Doc. #107-24] (December 15, 2008).

Howard never made a warranty claim and did not express any concerns regarding the ladder to

Koch. Page Dep. at 174-76 [Doc. #107-2]. Multiple Howard Industries employees had reported

difficulty using the ladder, however. *Id.* at 63-64.

The Plaintiffs filed suit on September 19, 2007, alleging a number of Mississippi Product

Liability Act ("MPLA") claims, negligence claims, and breach of warranty claims. Donna

Walker's claims are derivative of Joseph Walker's and therefore survive only to the extent that

his do. *McCoy v. Colonial Baking Co.*, 572 So. 2d 850, 853-54 (Miss. 1990). Koch removed the

case to federal court. [Doc. #1] (October 23, 2007).

The Plaintiffs' primary theory of recovery is that the fixed ladder was defective and

unreasonably dangerous under the provisions of the MPLA. The Plaintiffs argue that the SPM

should have had a platform and/or fixed stairs providing access to it or should have contained a

notice warning of the danger posed. Howard Industries did not request a platform or stairs on the SPM though Koch has provided access via stairs and platforms on other machines in the past. [Doc. #122-5 at 149] (January 15, 2009); Def.'s Br. at 4 [Doc. #108] (December 15, 2008); Uhde Dep. at 102 [Doc. #107-6]. Koch concedes that stairs or a platform could have been part of the design for the SPM at Howard Industries, but contends that there were space limitations involved.[2] Def.'s Reply Br. at 5 [Doc. #128] (January 30, 2009). Koch asserts several affirmative defenses, including comparative negligence, assumption of risk, and that the danger was open and obvious. Koch also alleges that the rungs of the ladder had been repainted biannually since its installation and that the ladder had therefore been modified after leaving Koch's control.

## II. STANDARD OF REVIEW

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The parties agree that Mississippi substantive law governs this claim. *See, e.g.*, Pl.'s Br. at ¶ 37; Def.'s Br. at 2 n.2 [Doc. #108]; *see generally In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007), *cert. denied by* 128 S. Ct. 1230 (deferring to the parties' agreement on which state's substantive law controlled).

---

[2] There is evidence that no space limitations existed. *See, e.g.*, Uhde Dep. at 56 [Doc. #107-6] (December 15, 2008) (testimony of Koch's representative stating (over objection and with self-described uncertainty) that he did not believe there to be "a space limitation"); *Id.* (stating that there was room for a platform and stairs).

Summary judgment is appropriate when the evidence before the Court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(b). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* There can be no genuine issue as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). This is true "since a complete failure of proof concerning an essential element of the nonmoviing party's case necessarily renders all other facts immaterial." *Id.* at 323.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

If the moving party fails to meet its "initial burden, the motion must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If

the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. The nonmoving party must show more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), and cannot satisfy its burden with "conclusory allegations [or] unsubstantiated assertions." *Little*, 37 F.3d at 1075. "[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Id.*

In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson,* 477 U.S. at 255. While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

# III. APPLICATION AND ANALYSIS

At issue in the pending motion are several claims brought by the Plaintiffs and affirmative defenses asserted by Koch. The Court will proceed through each in turn.

The MPLA governs "any action for damages caused by a product except for commercial damage to the product itself." MISS. CODE ANN. § 11-1-63. A manufacturer or seller of a product will be liable under the MPLA only if the claimant can "prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller" that the product was defective, that the "defective condition rendered the product unreasonably dangerous to the user or consumer," and the "defective and unreasonably dangerous condition of the

product proximately caused the damages for which recovery is sought." *Id.* at § 11-1-63(a).

Under the MPLA, a product can be defective in four ways: if [1] the product "deviated in a material way from the manufacturer's specifications or from otherwise identical units"; [2] the product "failed to contain adequate warnings or instructions"; [3] "[t]he product was designed in a defective manner"; or [4] "[t]he product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product." *Id.* at § 11-1-63(a)(i). Here, the Plaintiffs allege that the ladder was defective under all four definitions.

### 1. Plaintiffs' Manufacturing Defect Claim

First, Koch moves for summary judgment on the ground that the Plaintiffs have no evidentiary support for their allegation of manufacturing defect. Def.'s Reply Br. at 1-2 [Doc. #128] (January 30, 2008). To establish a manufacturing defect, the Plaintiffs must produce evidence that the ladder "deviated in a material way from [Koch's] specifications or from otherwise identical units." MISS. CODE ANN. § 11-1-63(a)(i)(1). Plaintiffs can establish a manufacturing defect with evidence of inferior or defective materials, or evidence of a malfunction. *See Shelter Ins. Co. v. Mercedes Benz, USA*, No. 1:03-CV-592, 2006 U.S. Dist. LEXIS 38011, *3-4 (N.D.Miss. June 8, 2006), *aff'd*, 236 Fed. App'x 45 (5th Cir. 2007) (citing *Cooper Tire & Rubber Co. v. Tuckier*, 826 So. 2d 679 (Miss. 2002)).

Having reviewed the record evidence, the Court finds that the Plaintiffs have produced no evidence that the ladder deviated from Koch's specifications, contained inferior or defective materials, or malfunctioned. *E.g.*, McPhate Dep. I at 81-82 [Doc. #107-12] (Plaintiffs' expert testified that there were no structural defects in the ladder). Instead, the Plaintiffs rely on the

argument that the ladder did not conform with Koch's specifications because "Koch specified that the SPM would be compliant with OSHA standards and regulations . . . ."  Pl.s' Br. at ¶ 18 [Doc. #122].  The Plaintiffs' argument, however, equivocates the concept of manufacturing specifications with the concept of a warranty or promise.  Although it is true that Koch contracted to provide a ladder that would be "designed to comply with [Koch's] interpretations of current OSHA regulations," there is no evidence that Koch deviated from its manufacturing specifications.  *E.g.*, Frenzel Dep. I at 237-38  [Doc. #107-18] (Plaintiffs' expert testified that he believed the installation was in "accordance with [Koch's] plans and specifications").  There is no evidence, for example, that Koch had specifications that the ladder would contain a platform but that – due to a manufacturing defect – the ladder was made without one.   Thus, Koch may have breached the contract by failing to design the ladder in a manner that was OSHA compliant,[3] but there is no evidence that the manufacturing process produced a ladder inconsistent with the manufacturing specifications.  This lack of evidence is fatal to the allegation of manufacturing defect and the claim must therefore be dismissed.

### 2.  Plaintiffs' Warning Defect Claim

Defective warning claims require proof that

the manufacturer or seller shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller, the manufacturer or seller knew or in light of reasonably available knowledge should have known about the danger that caused the damage for which recovery is sought and that the ordinary user or consumer would not realize its dangerous condition.

MISS. CODE ANN. § 11-1-63(c)(i).  Koch levels several arguments against the Plaintiffs' defective

---

[3] The issue of whether Koch breached the contract's warranty is discussed below.

warning claim.

First, Koch contends that the undisputed evidence establishes that Walker realized the danger before he was injured. Def.'s Br. at 13-14 [Doc. #108]. The MPLA does not require the Plaintiffs to prove that Walker did not realize the danger, however, to establish a warning defect. Instead, it requires proof that "the *ordinary* user or consumer would not realize its dangerous condition." MISS. CODE ANN. § 11-1-63(c)(i) (emphasis added). Clearly, Walker's realization of danger is not dispositive as to the issue of what an "ordinary" user would have realized. Walker's realization of danger is relevant for two other reasons, however. First, there is no evidence that Walker is anything but an ordinary user of the SPM and ladder. Second, Walker's realization of danger is an element of several affirmative defenses alleged by Koch. Accordingly, the Court will evaluate whether there is a genuine issue of fact as to whether Walker realized the danger before suffering his injuries.

The evidence pertaining to this issue is substantial and favors the conclusion that Walker had realized the danger. Walker used the ladder routinely in his employment. Walker had previously slipped while on the ladder and had reported to a supervisor that climbing the ladder to enter and exit the machine was "awkward." Walker Dep. I at 104-05 [Doc. #107-3]; [Doc. #107-16 at 2-3]. Koch argues (and common sense supports) that Walker would have connected these facts with danger.

The Court's role at this juncture, however, is not to make credibility assessments. *Reeves v. Sanderson Plumbing Prods*., 530 U.S. 133, 150 (2000) ("the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence"). The fact that the evidence may favor Koch's position is irrelevant. The

issue is whether there is record evidence from which the Court can reasonably draw the inference that Walker did not realize the danger. The Court finds there to be sufficient evidence to reasonably draw that inference. For example, the Plaintiffs have produced evidence that there were no warnings on or near the ladder. *See, e.g.*, [Doc. #122-11] (January 15, 2009). In addition, Walker continued to use the ladder after previously slipping and opted against reporting his complaints to Jason Page (the manufacturing engineer at Howard Industries in charge of the SPM project) though he was told he could do so. Walker Dep. I at 111 [Doc. #107-3]. Indeed, Walker used the ladder thousands of times without suffering injuries. Although Walker had described the use of the ladder as "awkward," he never indicated that he thought using the ladder was "dangerous." *See* Walker Dep. I. Consequently, the Court finds that the record evidence would allow a reasonable fact finder to conclude that Walker did not realize the danger in using the ladder and SPM.[4]

Similarly, the Court finds there to be a genuine issue of fact as to whether the *ordinary* user or consumer would realize the SPM's dangerous condition. First, the existence of a question of fact as to Walker's realization of the danger, begs the question whether an (additional) ordinary consumer would realize the danger. Second, there is evidence that other Howard Industries employees did not realize the dangers. *E.g.*, Page Dep. at 170 [Doc. #107-2] (testifying that he did not believe the SPM was dangerous); Walters Dep. at 37-38 [Doc. #107-

---

[4] This conclusion also defeats Koch's argument that because Walker had realized the danger, the Plaintiffs cannot establish proximate cause with regard to the defective warning. *See generally Austin v. Will-Burt Co.*, 361 F.3d 862, 869-70 (5th Cir. 2004) (citing *Wyeth Laboratories, Inc. v. Fortenberry*, 530 So. 2d 688, 691 (Miss. 1988)) ("Where the party to be warned has been informed of the danger, the manufacturer's failure to warn thereof is not shown to be a proximate cause, at least absent evidence that a manufacturer's warning would have changed that party's conduct.").

17] (testifying that no employees complained about the ladder even though employees identified other unsafe conditions). Third, there is evidence that Howard Industries employees routinely used the ladder to enter and exit the SPM and that Walker is the only person to have been injured doing so.

While an ordinary user would *likely* realize that closing the door atop the ladder is awkward, and would *likely* connect the awkwardness with danger, these probabilities are nothing more than the Court's inferences. The Court believes that the opposite inference could also reasonably be drawn. Namely, that while an ordinary user of the SPM might find the movements awkward or cumbersome, they might not realize that the movements were dangerous. Accordingly, the Court deems it appropriate to allow the parties to present evidence to a jury on the issue of whether "the ordinary user or consumer" would realize the ladder's allegedly dangerous condition.

Finally, Koch argues that the Plaintiffs have insufficient evidence to establish proximate cause because they have offered no evidence that Walker would have heeded a warning had one been provided. Def.'s Br. at 14 [Doc. #108]; *See Palmer v. Volkswagen of America, Inc.*, 904 So. 2d 1077, 1094 (Miss. 2005) ("Inadequate warnings cannot serve as the proximate cause of injuries where adequate warnings would have resulted in the same injuries"). The Court rejects this argument, finding a genuine issue of fact. In the errata to his deposition, Walker avers that he "didn't close the door [from the ground] because I wasn't trained to close it that way and there were no instructions or warnings provided to close it that way." [Doc. #122-29 at 4]. This raises the reasonable inference that Walker would have heeded a warning instructing him to close the door to the SPM from the floor. With regard to the credibility of Walker's errata, which

flagrantly contradicts his deposition testimony in some respects, the Court notes that it may not properly disregard evidence based on credibility determinations at this juncture. As a result, the Court finds a genuine issue of material fact as to this issue.

### 3. Plaintiffs' Design Defect Claim

Koch argues that the Plaintiffs have produced insufficient evidence to support their claim that the SPM and ladder had a design defect. The MPLA contains a number of requirements for establishing a design defect in addition to those listed above:

> A product is not defective in design or formulation if the harm for which the claimant seeks to recover compensatory damages was caused by an inherent characteristic of the product which is a generic aspect of the product that cannot be eliminated without substantially compromising the product's usefulness or desirability and which is recognized by the ordinary person with the ordinary knowledge common to the community.

Miss. Code Ann. § 11-1-63(b). The MPLA further states:

> the manufacturer . . . shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:
>
> (i) The manufacturer or seller knew, or in light of reasonably available knowledge or in the exercise of reasonable care should have known, about the danger that caused the damage for which recovery is sought; and
>
> (ii) The product failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the harm. A feasible design alternative is a design that would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers.

§ 11-1-63(f).

Koch first argues that the Plaintiffs cannot prove that the ladder and SPM were defective at the time they left Koch's control, as compared to at the time of Walker's accident. Def.'s Br.

at 16-17 [Doc. #108]. To that end, Koch has presented evidence that the ladder had been painted as many as 10 times since leaving Koch's control and that the rungs had an excessive amount of paint on them. Plaintiff's expert Andrew McPhate, who inspected the ladder, opined that there was an excessive amount of paint on the rungs and that the paint had degraded the fricative properties of the rungs. McPhate Dep. I at 27-28 [Doc. #107-12]. On the other hand, Paul Chandler, another Howard Industries employee, opined that he doubted the ladder had been painted ten times, stating that 10 sounded like a "very high number." Chandler Dep. at 39-40 [Doc. #122-5]. Furthermore, the theory of the Plaintiffs' case is that the SPM should have had a platform and/or fixed stairs leading up to the door and that any type of fixed ladder would have been a dangerous substitute. The absence of a platform and/or stairs has not changed since the ladder left Koch's control. Finally, the Court is not assured that McPhate, who is an engineer, is qualified to speak about the fricative properties of the ladder.[5] His opinion reports do not address that topic. *See* [Doc. #49-5] (May 30, 2008); [Doc. #105-2] (December 15, 2008). Consequently, the Court finds there to be a genuine issue of fact as to whether the SPM and ladder had been materially altered.

Second, Koch argues that it did not know and had no reason to believe that the SPM and ladder were dangerous. Def.'s Br. at 17 [Doc. #108]. As stated above, the Court finds that there is a genuine issue of material fact as to whether an ordinary user of the ladder and SPM would have realized the danger. Similarly, the Court believes there to be a genuine issue of material fact as to whether Koch should have known of any such danger when the equipment left its

---

[5] The Court does not now hold that expert testimony is per se required on this subject, but simply notes that the issue has not been briefed by the parties. As a result, the Court reserves judgment as to whether McPhate's opinion on this subject carries probative value.

control.[6]

Finally, Koch argues that the Plaintiffs have no evidence of the existence of a feasible alternative design. Def.'s Br. at 17-18 [Doc. #108]. The Court finds this argument to be without merit. McPhate indicated in his report that a ladder and stairs could have been substituted for less than $500 per door. [Doc. #105-2]. Koch has conceded that it would have provided stairs or a platform had Howard Industries requested them. Def.'s Reply Br. at 3, 5 [Doc. #128]. Koch similarly conceded that it "has provided access via stairs and platforms on other machines in the past" when requested. Def.'s Br. at 4. As stated above, there is also evidence that there was sufficient space for stairs at Howard Industries. *See, ante*, at 2 n.2. As a result, the Court finds there to be a genuine issue as to whether a feasible alternative design existed that would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality, or desirability of the product to the users of the SPM.

### 4. Plaintiffs' Breach of Express Warranty Claim

Koch contends that Walker's breach of express warranty claim must be dismissed as a matter of law. Def.'s Br. at 24-25 [Doc. #108]. Koch argues that the claim is barred by the statute of limitations. The applicable statute provides:

> (1) An action for breach of any contract for sale must be commenced within six (6) years after the cause of action has accrued.

---

[6] This analysis also applies to Koch's argument that the Plaintiffs have insufficient evidence that the equipment was unreasonably dangerous. *See Guy v. Crown Equip. Corp.*, 394 F.3d 320, 324 (5th Cir. 2004) (whether product is unreasonably dangerous turns in part on whether it failed to function as expected). Moreover, Koch's reliance on *Walters v. Trail King Indus.*, No. 2:05-CV-54, 2006 WL 3360750 (S.D.Miss. Nov. 20, 2006), *aff'd*, 259 Fed. App'x 627 (5th Cir. 2007), is misplaced. In *Walters*, the product at issue had been undisputably and materially altered between the time it left the manufacturer's control and the date of the plaintiff's injury. *Id.* at *8.

> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

MISS CODE ANN. § 75-2-725. Accordingly, the Plaintiffs had to bring suit within six years of the delivery of the SPM and ladder unless the "warranty explicitly extends to future performance."

Here, the Plaintiffs brought suit on September 19, 2007. Koch delivered the SPM and ladder in 1998, more than six years before suit was filed. Accordingly, the statute of limitations bars this claim unless the "warranty explicitly extends to future performance."

The Plaintiffs argue that the warranty is explicitly extended to future performance. Plaintiffs aver, "[t]he warranty provision includes the clause: 'Koch reserves the right to appeal discrepancies claimed by local inspectors to appropriate national review board *before alternations are made*.'" Pl.s' Br. at 26-27 [Doc. #122]. The Plaintiffs argue that since this statement did not provide for a termination of the warranty, "the warranty clearly applies to the life of the machine." *Id.* at 27.

This argument is meritless and, without more, misleading. By failing to cite to the pages of the contract to which Plaintiffs' counsel quoted, seems to have deliberately attempted to give the impression that the aforementioned statement appeared in the warranty section of the contract. In reality, the sentence quoted by the Plaintiffs is not in the warranty section. The warranty section of the contract is on page 20 of the contract and appears under a large, bolded heading entitled, "WARRANTY." [Doc. #107-9]. The statement quoted by Plaintiffs' counsel appears on page 11 of the contract and appears in a distinct section, which is entitled, "OSHA

Regulations." *Id.* Thus, counsel's averment that the "warranty provision includes" the aforementioned statement is patently false. In addition, the statement quite evidently would not "explicitly" extend the warranty to future performance even if it were located in the correct section. The statement does not include the word "warranty" or "extend" and an objective reading of the statement would not lead anyone to believe that extension of the warranty was its intended effect. As a result, the motion should be granted with regard to the breach of express warranty claim.

### 5. Proximate Cause

Koch argues that the Plaintiffs have failed to produce evidence of proximate cause, which is vital to each of the claims discussed above. MISS. CODE ANN. § 11-1-63(a)(iii). Koch points to the failure of Plaintiffs' experts to render an admissible opinion concerning proximate cause. Although the Court agrees that the expert opinions provide little if any support for the element of proximate cause, *but see* [Doc. #105-2] (McPhate opines that the door to the SPM was designed to be opened from the ladder), the Court is not convinced that expert testimony is required to establish the element. *C.f. Guy*, 394 F.3d at 331 ("the MPLA's plain language does not state expert testimony is required per se to prove a design defect").

"Proximate cause of an injury is that cause which in natural and continuous sequence unbroken by any efficient intervening cause produces the injury and without which the result would not have occurred." *Delahoussaye v. Mary Mahoney's Inc.*, 783 So.2d 666, 671 (Miss. 2001). To establish proximate cause, plaintiffs must establish foreseeability, but are "not required to prove that the exact injury sustained by the plaintiff was foreseeable." *Glover v. Jackson State Univ.*, 968 So. 2d 1267, 1278 (Miss. 2007). It is "well-settled" under Mississippi

law that "there may be more than one proximate cause of an injury." *Miss. Power & Light Co. v. Walters*, 248 Miss. 206, 252 (1963), *corrected*, 160 So. 2d 908 (Miss. 1964). "[W]here the intervening cause of injury was foreseeable, it cannot supercede the liability of the defendant." *Glover*, 968 So. 2d at 1279. "[W]hen reasonable minds might differ on the matter, the question of what is the proximate cause of an injury is usually a question for the jury." *Miss. Power & Light Co.*, 248 Miss. at 252-53.

Here, the record evidence could lead a fact finder to reasonably infer that Koch's actions proximately caused Walker's injuries. As a result, the question of proximate cause in the case is a question for the jury.

### 6. Plaintiffs' Implied Warranty of Merchantability Claim

Koch moves for summary judgment on the Plaintiffs' implied warranty of merchantability claim on the basis that Koch was never granted the opportunity to cure. This argument is not well taken. The Supreme Court of Mississippi reiterated last year that "[p]rivity of contract is not required" to advance this claim. *Watson Quality Ford v. Casanova*, 999 So.2d 830, 834 (Miss. 2008). It follows that where the parties lack privity of contract, the third party need not have provided the seller with the attempt to cure. As a result, the motion to dismiss this claim should be denied.

### 7. Plaintiffs' Implied Warranty of Fitness for a Particular Purpose Claim

Koch next moves for summary judgment with regard to the Plaintiffs' implied warranty of fitness for a particular purpose claim. "[N]o claim for breach of the implied warranty of fitness for a particular purpose will lie when a product is to be used for its ordinary purpose." *Watson Quality Ford*, 999 So. 2d at 835. Here, there is no evidence that either the SPM or the

17

ladder was used for any other purpose than its ordinary purpose. Further, the Plaintiffs did not buy the equipment from Koch, so they have no breach of implied warranty of fitness for a particular purpose. *Betts v. GMC*, No. 3:04-CV-169, 2008 U.S. Dist. LEXIS 54350, *45 (N.D.Miss. July 16, 2008) (citing *Austin v. Will-Burt Co.*, 232 F. Supp. 2d 682, 688 (N.D.Miss. 2002), *aff'd*, 361 F.3d 862 (5th Cir. 2004) ("Under Mississippi law, the warranty for fitness for a particular purpose is not applicable where plaintiffs did not purchase the product from the defendant"); *Albritton v. Coleman Co.*, 813 F. Supp. 450, 455 (S.D.Miss. 1992)). As a result, Koch's motion is granted with regard to this claim.

### 8. Plaintiffs' Punitive Damages Claim

Koch seeks dismissal of any claims for punitive damages brought by the Plaintiffs. "Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant . . . acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." MISS. CODE ANN. § 11-1-65(1)(a). In response to Koch's motion, the Plaintiffs have been unable to point to any evidence supporting their claim for punitive damages, instead asserting that there is a genuine issue of fact. Pl.s' Br. at 28 [Doc. #122]. Having reviewed the record, the Court finds no evidence from which a reasonable fact finder could conclude that Koch acted with actual malice, gross negligence, or actual fraud. As a result, the Plaintiffs' claims for punitive damages should be dismissed.

### 9. Plaintiffs' Negligence Claims

Several district courts in this circuit have concluded that negligence claims premised on defective products are governed by the MPLA and therefore need not be considered separately.

In *Betts v. GMC*, the court held that "[t]he MPLA notwithstanding, the Supreme Court of Mississippi has held that it does not constitute reversible error for a court to refuse to instruct a jury as to both negligence and as to a defective design theory under the risk-utility standard. For these reasons, plaintiffs' negligence claims will be dismissed." 2008 U.S. Dist. LEXIS 54350, *46 (citing *Estate of Hunter v. GMC*, 729 So. 2d 1264, 1277 (Miss. 1999)). In *Lundy v. Conoco, Inc.*, the court held that "the failure to warn/inadequate warnings claims, regardless of the fact that Plaintiffs labeled one claim 'products liability' and the other 'negligence,' are both governed by the Mississippi Products Liability Act." No. 3:05-CV-477, 2006 U.S. Dist. LEXIS 824423 (S.D.Miss. Nov. 10, 2006); *but see Williams v. Daimler Chrysler Corp.*, No. 4:06-CV-188, 2008 U.S. Dist. LEXIS 55123, *7-8 (N.D.Miss. July 18, 2008), *aff'd on other grounds*, No. 08-60725, 2009 WL 414578 (5th Cir. Feb. 19, 2009). As a result, the Plaintiffs' negligence claims do not survive apart from their MPLA claims and no negligence jury instructions will be given at trial.

### 10. Koch's Assumption of Risk Defense

Koch seeks dismissal of each of Walker's MPLA claims based on the affirmative defense of assumption of risk. Def.'s Br. at 20-21 [Doc. #108]. The MPLA states that "the manufacturer . . . shall not be liable if the claimant (i) had knowledge of a condition of the product that was inconsistent with his safety; (ii) appreciated the danger in the condition; and (iii) deliberately and voluntarily chose to expose himself to the danger in such a manner to register assent on the continuance of the dangerous condition." MISS. CODE ANN. § 11-1-63(d). "Often the question of whether the plaintiff appreciated and understood the risk is a question of fact for the jury, however, 'in certain circumstances the facts may show as a matter of law that the plaintiff understood and appreciated the danger.'" *Green v. Allendale Planting Co.*, 954 So. 2d 1032,

1041 (Miss. 2007) (quoting *Herod v. Grant*, 262 So.2d 781, 783 (Miss. 1972)).

Here, the Court finds there to be a genuine issue of fact as to whether Walker appreciated the danger in the SPM and ladder. *See, ante*, at 9-10. As a result, Koch's motion for summary judgment based on the affirmative defense of assumption of the risk should be denied.

### 11. Koch's Open and Obvious Defense

Finally, Koch moves for summary judgment based on the affirmative defense that the ladder and SPM constituted an open and obvious danger. *E.g.*, Def.'s Br. at 22-24 [Doc. #108]. The parties disagree to some extent as to the whether the open and obvious defense provides a partial or complete bar to the Plaintiffs' claims. *E.g.*, Pl.s' Br. at ¶ 37.

The MPLA states that the open and obvious defense applies to failure to warn claims only. *Seymour v. Brunswick Corp., Mercury Marine Div.*, 655 So. 2d 892 (Miss. 1995) ("The defense of open and obvious was reenacted but is only applicable to product liability cases based upon theories for inadequate warnings or instructions where it is inherently applicable"); *see* Miss. Code Ann. § 11-1-63(e). In relevant part, the MPLA states that

> the manufacturer . . . shall not be liable if the danger posed by the product is known or is open and obvious to the user or consumer of the product, or should have been known or open and obvious to the user or consumer of the product, taking into account the characteristics of, and the ordinary knowledge common to, the persons who ordinarily use or consume the product.

§ 11-1-63(e). To clarify how the open and obvious defense bars failure to warn claims under the MPLA, the Supreme Court of Mississippi has stated that

> a thing warned of is either already known to the plaintiff, or it's not. If it's already known to the plaintiff, then the warning serves no purpose. If it is not already known to the plaintiff, then the thing warned of was not open and obvious in the first instance. Thus, an invitee may not recover for failure to warn of an open and obvious danger . . . An 'open and obvious' danger – in the legal sense – is known to the

plaintiff; either actually, or constructively.

*Vaughn v. Ambrosino*, 883 So. 2d 1167, 1171, 1171 n.3 (Miss. 2004). Thus, the question posed

is whether the danger posed by the SPM and ladder was already known, or should have been

known, to Walker. As the Court has concluded that there is a genuine issue as to both Walker's

and an ordinary user's appreciation of the danger, *ante*, at 9-11, the Court finds there to be a

genuine issue of fact as to whether the danger was open and obvious. As a result, Koch's motion

for summary judgment on this basis should be denied.

## IV. CONCLUSION

For these reasons, the Court concludes that Koch's motion for summary judgment should

be granted as to the following of the Plaintiffs' claims: [1] manufacturing defect, [2] breach of

express warranty, [3] breach of implied warranty of fitness for particular purpose, [4] punitive

damages, and [5] negligence (distinct from the MPLA). Conversely, the Court has concluded

that Koch's motion for summary judgment should be denied as to the Plaintiffs' claims for

inadequate warning, design defect, and breach of implied warranty of merchantability. The Court

has found there to be genuine issues of material fact pertaining to those claims and to the

affirmative defenses of assumption of risk and open and obvious danger.

IT IS, THEREFORE, ORDERED AND ADJUDGED that Koch's motion for summary

judgment [Doc. #107] is **granted in part** and **denied in part**.

SO ORDERED AND ADJUDGED on this, the 27th day of March, 2009.


*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE